478 So.2d 926 (1985)
The LOUISIANA LAND AND EXPLORATION COMPANY
v.
TEXACO, INC.
No. CA-3146.
Court of Appeal of Louisiana, Fourth Circuit.
October 23, 1985.
Rehearing Denied December 20, 1985.
Milling, Benson, Woodward, Hillyer, Pierson & Miller, Charles D. Marshall, Jr., *927 Appeal Counsel, David N. Schell, Jr., New Orleans, for plaintiff-appellee Louisiana Land and Exploration Co.
Gene W. Lafitte, Appeal Counsel, George J. Domas, Anne E. Tate, Liskow & Lewis, and Frederick W. Veters, Patrick J. Butler, Larry N. Port, Robert E. Plumb, Jr., James D. Hurley, Texaco Inc., New Orleans, for defendant-appellant Texaco, Inc.
Before SCHOTT, KLEES and BYRNES, JJ.
KLEES, Judge.
This appeal stems from the granting of a motion for partial summary judgment in favor of the Louisiana Land and Exploration Company (LL & E). LL & E, which leases certain lands to Texaco for the production of gas, brought suit against Texaco claiming Texaco had failed to pay proper royalties under the leases. Texaco answered LL & E's petition for damages by denying that its royalty payments were improper, and subsequently filed a motion for partial summary judgment seeking a declaration that its payments were proper at least with respect to the gas it had produced from wells drilled prior to the enactment in 1978 of the Natural Gas Policy Act (NGPA), 15 U.S.C. § 3301 et seq. In response, LL & E filed a cross motion for partial summary judgment to declare these payments improper, which was eventually granted by the district court.
The eleven leases involved here generally call for royalty payments based on the value of the gas produced. The primary issue on appeal is whether that value should be determined under Section 105 of the NGPA, as Texaco argues, or under the higher ceiling price reflected in Section 109 of the NGPA, as LL & E claims. We agree with the district court that Section 109 applies. A second issue is whether the partial summary judgement was procedurally appropriate in this situation. We find that it was appropriate, and therefore affirm the ruling of the district court.
The problem in this case arose because Texaco, in an effort to secure a market for natural gas when it was not a particularly valuable commodity, entered into long term sales agreements with Louisiana industrial consumers promising future delivery of gas at what are now below-market prices. There are generally two types of marketing contracts for the sale of gas.
A "warranty" contract is an arrangement whereby the producer is obligated to deliver to the purchaser certain quantities of gas; the source of the gas is unspecified and the producer may therefore fulfill his obligation from any source he chooses. This type of contract differs from the so-called "dedication" contract, whereby the producer contracts with a customer agreeing to furnish all the gas produced from specified reserves, thus "dedicating" those reserves to the particular customer. All the gas involved in this dispute is being used by Texaco to service warranty contracts Texaco entered into with intrastate industrial consumers prior to 1978, when the NGPA was enacted.
The LL & E leases require Texaco to pay royalties based upon a percentage of the value of the gas produced. The Louisiana Supreme Court has already held that the value of natural gas upon which royalty is owed may not exceed the price to which sale of that gas is limited by federal regulation. Shell Oil Co., v. Williams, 428 So.2d 798 (La.1983). In determining this price, Texaco claims that Section 105 of the NGPA, entitled "Ceiling price for sales under existing intrastate contracts," is applicable. This section provides, in pertinent part:
(a) Application The maximum lawful price computed under subsection (b) of this section shall apply to any first sale of natural gas delivered during any month in the case of natural gas, sold under any existing contract or any successor to an existing contract, which was not committed or dedicated to interstate commerce on November 8, 1978.
(b) Maximum lawful price
(1) General rule.Subject to paragraphs (2) and (3), the maximum lawful price under this section shall be ...

*928 (A) the price under the terms of the existing contract, to which such natural gas was subject on November 9, 1978, as such contract was in effect on such date ...
15 U.S.C.A. § 3315.
Relying on this Section, Texaco has been paying royalties to LL & E based upon the contract prices specified by the warranty contracts which Texaco has been servicing with the LL & E gas. LL & E's position is that Section 105 does not determine the ceiling price for this gas because the gas is not "subject to" any contract; instead, the LL & E gas is being used to fulfill these particular contracts solely because Texaco has chosen to use it rather than to use gas from other reserves. According to LL & E, the ceiling price for the gas is fixed by Section 109 of the NGPA, which provides, in pertinent part:
Ceiling price for other categories of natural gas
(a) ApplicationThe maximum lawful price computed under subsection (b) of this section shall apply to any first sale of any natural gas delivered during any month, in the case of any natural gas which is not covered by any maximum lawful price under any other section of this part, including
. . . . . .
(3) natural gas which was not committed or dedicated to interstate commerce on November 8, 1978, and which was not subject to an existing contract on such day....
15 U.S.C.A. § 3319.
In granting LL & E's motion, the district court found that although the gas was being "sold under" contracts existing when the NGPA was adopted, as is required by subsection (a) of Section 105, this fact was not enough to submit the gas to the Section 105 price limitation. According to the lower court, subsection (a) must be read in para materia with subsection (b) of Section 105 and subsection (a)(3) of Section 109, both of which refer to gas that is "subject to" or "not subject to" an existing contract. The court found that because of the flexibility of the warranty contracts, even though the gas may have been economically committed to these customers, it was not "subject to" any contract, and therefore was governed by Section 109 rather than Section 105.
After reviewing the law and the facts, we find that the district court was correct in its determination. Texaco's argument is based upon isolating the term "sold under" in subsection (a) of Section 105, rather than reading the Section as a whole to determine its meaning. We find that the use of the term "subject to" in subsection (b), (and again in Section 109) necessarily qualifies the more general language "sold under". (Cf. Tenneco Exploration, Ltd. v. Federal Energy Regulatory Commission, wherein the federal Fifth Circuit read NGPA Section 104 in para materia with Section 109 to determine the applicability of Section 109 to gas that had not been committed or dedicated to interstate commerce within the meaning of the NGPA.)
The term "subject to," in its ordinary sense, means "subordinate to" or "governed or affected by". See Black's Law Dictionary 1278 (5th Ed.1979). There is no question that there are no particular gas reserves governed by warranty contracts entered into by Texaco. It was solely Texaco's choice to meet its obligations to these customers with LL & E's gas. Under the circumstances, we cannot say that the gas in question was subject to an existing contract at the time of the NGPA's enactment.
Our conclusion is buttressed by the fact that all the existing authority on this point, although persuasive rather than authoritative, has interpreted the phrase "subject to" in Section 105 as requiring that a source of gas be described in a contract in order to trigger the Section's application. See: In the Matter of Amoco Production Co., 78 IBLA 93 (1983) (A decision by the Interior Board of Land Appeals with appeal currently pending in the federal district court, western district of La., docket # CV84-0916); Letter opinion by Charles *929 A. Moore, general counsel of Federal Energy Regulatory Commission, addressed to Tipperary Corp., 1982 Federal Program Advisory Service, p. 3, para. 4, 972.) Therefore, we hold that the district court correctly concluded that Section 109 of the NGPA regulates the ceiling price for the gas in question.
Texaco additionally contends that partial summary judgment was procedurally improper in this case both because the decision did not determine any portion of its liability to LL & E and because there are issues of disputed fact that prevent summary judgment. We disagree.
The district court's decision is a proper partial summary judgment under Louisiana Code of Civil Procedure article 966(C), which provides that summary judgment "may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." In this case, the district court determined that Texaco is liable to LL & E for paying royalties calculated upon the value of the gas as determined under the Section 105 contract price rather than the Section 109 ceiling price. The extent of the damages, if any, suffered by LL & E must be determined in a further proceeding. No damages have yet been proven, and indeed, the partial summary judgment would be proper even if none are ever established. See, e.g. CBM Engineers, Inc. v. Transcontinental Insurance Co., 460 So.2d 745 (La.App. 3rd Cir.1984), wherein the court approved the procedure of granting a partial summary judgment on the issue of an insurer's obligation to defend, reserving to the insured the right to establish damages in a further proceeding. We reject LL & E's contention that it has proven by affidavit that the gas could at all times have been sold at the Section 109 ceiling price, thereby establishing its value for royalty purposes under the leases. Instead, we find that the value of the gas within the terms of the leases is a disputed factual issue to be determined at the hearing on damages.
As for the other genuine issues of fact which Texaco claims should prevent summary judgment herein, we find that they also relate solely to damages rather than to liability. Accordingly, we affirm the partial summary judgment granted by the district court and remand the case for a determination of damages.
AFFIRMED AND REMANDED.